UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REX MOURTOS,

        Plaintiff,

v.

SETERUS, INC.,
Successors in Interest or Assigns,

        Defendant.
_____/

Case No. 13-12422
Hon. Lawrence P. Zatkoff

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on October 15, 2013

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant Seterus, Inc.'s Motion to Dismiss [dkt 6]. The motion has been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument. For the following reasons, Defendant's motion is GRANTED.

**II. BACKGROUND**

**A. FACTUAL BACKGROUND**

This is a case involving the foreclosure of Rex Mourtos's (the "Plaintiff") home by Seterus, Inc. (the "Defendant"). On January 15, 2004, Plaintiff entered into an agreement (the "Original Loan Agreement") to finance his home in Dearborn Heights, Michigan (the "Home").

The Original Loan Agreement secured a mortgage in the amount of $297,000.00 for Plaintiff's Home.  Although the Original Loan Agreement was between Plaintiff and Quicken Loans, it was subsequently assigned to Federal National Mortgage Association ("Fannie Mae").  Defendant is the loan servicer for Fannie Mae.

In 2010, Plaintiff attempted to open a restaurant but was unable to keep the business afloat.  Consequently, Plaintiff applied for and received a loan modification (the "Modified Loan Agreement") pursuant to the Home Affordable Modification Program ("HAMP").  Under the Modified Loan Agreement, Plaintiff's interest rate was lowered to 2% and his loan term was extended to nearly 40 years.  Nevertheless, Plaintiff fell behind on his monthly payments.

Defendant began servicing Plaintiff's Modified Loan Agreement in 2011.  On June 28, 2012, Defendant sent Plaintiff reinstatement paperwork, indicating that if Plaintiff failed to make the Modified Loan Agreement current he would be foreclosed upon.  At that time, Plaintiff requested that Defendant consider him for another loan modification (the "Potential New Loan Agreement").  Specifically, Plaintiff requested that the Potential New Loan Agreement contain the same monthly payment Plaintiff had under the Modified Loan Agreement, and that Defendant add the amount Plaintiff was behind on under the Modified Loan Agreement onto the back end of the Potential New Loan Agreement.

Although disputed, Plaintiff asserts that Defendant advised him it would notify him once a decision had been made.  Plaintiff alleges he never received an answer from Defendant on Plaintiff's request for the Potential New Loan Agreement.  Defendant asserts that, on October 17, 2012, it sent Plaintiff three letters outlining why Plaintiff's request for the Potential New Loan Agreement was denied.  Plaintiff does admit that in October of 2012, he received notice of an upcoming Sheriff's sale of his Home.

A foreclosure sale was held on November 8, 2012, in satisfaction of Plaintiff's Modified Loan Agreement. The Sheriff's Deed was recorded with the Wayne County Register of Deeds on November 26, 2012. Fannie Mae purchased the Home at the foreclosure sale.

**B. PROCEDURAL BACKGROUND**

Plaintiff filed his Complaint on May 7, 2013, in Wayne County Circuit Court. On May 13, 2013, Defendant received copies of Plaintiff's Summons and Complaint. On June 3, 2013, Defendant timely removed the matter to this Court on the basis of diversity jurisdiction.

In his complaint, Plaintiff alleges claims against Defendant for fraudulent misrepresentation (Count I), estoppel (Count II), negligence (Count III), violation of the Michigan Collection Practices Act (Count IV)[1], violation of the Fair Debt Collection Practices Act (Count V), and violation of the Michigan Consumer Protection Act (Count VI). On July 12, 2013, Defendant filed the instant motion.

### III. LEGAL STANDARD

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of a party's claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in that party's favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577–78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than a bare assertion of legal conclusions. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the

---

[1] Confusion exists between the parties on Count IV. Plaintiff originally claimed a "violation of the fair debt collection practices act (state)." Defendant pointed out that there is no "Fair Debt Collection Practices Act" in Michigan, and addressed the Michigan Occupational Code in its briefs instead. In Plaintiff's response brief, Plaintiff refers only to the Michigan Collection Practices Act.

speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the party pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556. *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court may only consider "the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the [Court] may take judicial notice." 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2000).

## IV. ANALYSIS

Prior to addressing the merits of Plaintiff's claims, Defendant asserts that the Court should dismiss the entire case due to Plaintiff's failure to allege any fraud or irregularity in the foreclosure procedure itself. Defendant claims Michigan law requires a showing of fraud or irregularity within the foreclosure procedure itself to overturn a foreclosure sale after the expiration of the statutory redemption period. Plaintiff does not dispute that the statutory redemption period has expired;[2] rather, he asserts that his Complaint demonstrates a sufficient case of fraud to warrant setting aside the foreclosure sale. As discussed below, the Court finds Defendant's argument compelling.

Under Michigan law, a court's ability to set aside a foreclosure is extremely limited in circumstances where the statutory redemption period has lapsed. *See Conlin*, 714 F.3d at 359. A court may set aside a foreclosure sale in those circumstances only where the mortgagor can show fraud or irregularity relating to the foreclosure procedure itself. *Id.* at 360.

---

[2] Both Plaintiff and Defendant seem to accept that the redemption period expired on April 8, 2013. However, both Michigan statute and the Sheriff's deed from the foreclosure sale make clear that the redemption period expired on May 8, 2013. This is one day after Plaintiff filed his Complaint. The Sixth Circuit has found, though, that the filing of a lawsuit does not toll the expiration of the statutory redemption period in Michigan. *See Conlin*, *v. Mortgage Elec. Registration Sys., Inc.*, 714 F.3d 355, 360 (6th Cir. 2013).

The Court finds Plaintiff's Complaint fails to allege any fraud or irregularity in the foreclosure procedure itself; rather, Plaintiff's contentions stem only from the way in which Defendant handled Plaintiff's request for a Potential New Loan Agreement. Plaintiff concedes in his Complaint that he was in default on the Modified Loan Agreement, and that he received notice of the foreclosure sale. The only fraud or irregularity advanced by Plaintiff is his allegation that he never received a yes or no answer on his request for a Potential New Loan Agreement. Even accepting this factual allegation as true, it would not constitute the fraud or irregularity necessary to set aside a completed foreclosure sale. *See Williams v. Pledged Property IL LLC*, No. 12-1056, 2012 WL 6200270 at *468 (6th Cir., December 13, 2012) ("Despite the fact that the [loan modification] negotiations may have taken place during the foreclosure process, these negotiations remained separate from the foreclosure process itself.") (internal citations omitted); *Shamoun v. Fed. Nat'l Mortgage Assoc.*, No. 12-15608, 2013 WL 2237906 at *4 (E.D. Mich., May 21, 2013) (holding allegation that plaintiff was in the process of negotiating a loan modification when the defendant foreclosed did not "constitute an irregularity sufficient to set aside the foreclosure sale.").

Plaintiff also asserts that the instant case is not of the sort that requires fraud or irregularity to be proven, and that to do so would illogically allow banks to continually "escape claims of fraud." Complaints such as these, dealing with the logic behind a given state law, fall outside the parameters of the Court's jurisdiction; Plaintiff's opinions on this front are thus best directed towards the Michigan Legislature.

Additionally, the arguments underlying Plaintiff's challenge fail as a matter of law. Plaintiff's Complaint fails to give Defendant fair and clear notice of what Plaintiff's claims are and the grounds upon which they rest. Plaintiff seems to be confused as to what fraudulent

5

action he is accusing Defendant of perpetrating. While including in his common allegations that the Modified Loan Agreement was reached with Defendant, and that he was behind on his payments under this Modified Loan Agreement, Plaintiff later blatantly contradicts himself in his Complaint—indeed, on the very same page—by stating he was never behind on his modified payments. *See* Dkt. #1, Ex. A, p. 3. The Court cannot make sense of this confusing position; Plaintiff's response brief seems to recognize this explicit contradiction, focusing solely on Defendant's alleged misconduct in handling Plaintiff's request for the Potential New Loan Agreement. Plaintiff simply cannot seem to decide which of Defendant's actions he is requesting this Court hold Defendant accountable for, instead leaving a conglomeration of assertions and legal conclusions the Court cannot permissibly stretch into a finding of properly pleaded allegations of fact.

The ease with which Plaintiff's Complaint switches between Defendant's alleged misrepresentations under the Modified Loan Agreement and its purported misconduct with regards to the Potential New Loan Agreement is dizzying. Counts I, II, III and VI of Plaintiff's Complaint inexplicably dance back and forth between actions Defendant allegedly took with regards to two very different loan arrangements, ostensibly in an attempt to prove some sort of malfeasance in gross on Defendant's part. In Counts IV and V of his Complaint, Plaintiff further beclouds the issue by alleging misconduct completely unrelated to any of the aforementioned loan agreements. Instead of providing factual content upon which the Court could rule, Plaintiff makes blanket assertions that Defendant mailed Plaintiff a statement—completely unmentioned up to this point in the Complaint—in an attempt to dissuade Plaintiff from challenging the validity of the debt. The Court finds that such legal assertions, made without any factual content whatsoever, cannot survive the instant motion.

6

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [dkt 6] is GRANTED.

IT IS SO ORDERED.

                                          s/Lawrence P. Zatkoff
                                          HON. LAWRENCE P. ZATKOFF
                                          U.S. DISTRICT JUDGE

Dated:  October 15, 2013